UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Richard Fink,

    Petitioner,

 vs.        REPORT AND RECOMMENDATION

Joan Fabian, Commissioner
of Corrections,

     Respondent.   Civ. No. 06-3908 (RHK/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. <u>Introduction</u>

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus, see <u>Title 28 U.S.C. §2254</u>.

The Petitioner Richard Fink ("Fink") appears pro se, and the Respondent State of Minnesota (the "State"), appears by J. Michael Richardson, Assistant Hennepin County Attorney.

For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be dismissed with prejudice.

## II.  Facts and Procedural Background

Fink is a State prisoner, who is currently serving a 326-month sentence at the Minnesota Correctional Facility, in Stillwater, Minnesota.  The sentence resulted from Fink's conviction, by a Jury, on November 2, 1999, in Hennepin County District Court, on one Count of Intentional Murder in the Second Degree, in violation of Minnesota Statutes Section 609.19, Subdivision 1(1), and one Count of Unintentional Murder in the Second Degree, committed in the course of a Felony, in violation of Minnesota Statutes Section 609.19, Subdivision 2(1).  The facts which led to Fink's conviction were summarized by the Minnesota Court of Appeals, in Fink's appeal for Post-Conviction relief as follows:

> Richard Fink was sitting in the driver's seat of his car at approximately 3:00 a.m. on June 1, 1999, when he shot and killed Craig Kallevig, who was standing just outside Fink's car.  Kallevig was allegedly demanding that Fink, from whom Kallevig had previously purchased drugs, provide him drugs on credit.  Fink fled the scene of the shooting and police arrested him the following day.

Fink v. State ("Fink III"), 2006 WL 1891757 at *1 (Minn. App., July 11, 2006), rev. denied (Minn., September 27, 2006).[1]

Fink filed an appeal from his conviction in the Minnesota Court of Appeals, which was based upon the following assertions:  1) improper Jury instructions; 2) improper use of his prior assault conviction; 3) prosecutorial misconduct; 4) erroneous failure to grant a downward departure from the presumptive sentence; 5) ineffective assistance of counsel; 6) improper conviction on two Counts of Murder in the Second Degree; 7) violation of his Sixth Amendment right to a Trial by Jury; and 8) violation of his Equal Protection rights.  See, State v. Fink ("Fink I"), 2001 WL 218893 at *1 (MinnApp., March 6, 2001).

  With respect to his last two claims, Fink claimed that his Sixth Amendment right to a Trial by Jury, and his Equal Protection rights, were violated because all of his

---

[1]Since the time of his original Trial and direct appeal, Fink has claimed that the gun accidentally discharged after he raised it in self-defense against Kallevig.  See, State v. Fink ("Fink I"), 2001 WL 218893 at *1 (Minn. App., March 6, 2001).  Despite Fink's assertion, the Record before us contains no testimony, or other evidence, which would rebut, by clear and convincing evidence, the presumption of correctness in the State Court's factual findings.  See Title 28 U.S.C. §2254(e)(1); Guinn v. Kemna, 489 F.3d 357, 359 (8th Cir. 2007); Lupien v. Clarke,  403 F.3d 615, 618 (8th Cir. 2005); Green v. Norris, 394 F.3d 1027, 1029 (8th Cir. 2005).  Accordingly, for the purposes of this Petition, we accept, as our factual Record, those facts which were set forth by the Minnesota Court of Appeals in Fink v. State, 2006 WL 1891757 at *1 (Minn. App., July 11, 2006), rev. denied (Minn., September 27, 2006).

venire members were white.  The Minnesota Court of Appeals noted that Fink was not guaranteed a Petit Jury "of a particular racial composition or one that mirrors the racial makeup of the community."  Id., at *3, quoting State v. Willis, 559 N.W.2d 693, 700 (Minn. 1997).  Since Fink failed to prove a systematic exclusion of minorities from the Jury pool over time, the Court found that Fink had not established a violation of his constitutional rights.  Id.  Ultimately, after considering each of Fink's claims on the merits, the Court affirmed Fink's conviction and sentence, and the Minnesota Supreme Court denied Fink's Petition for Review on May 15, 2001.

Following his unsuccessful direct appeal, Fink filed a Petition for Post-Conviction relief in the Hennepin County District Court.  In his Petition, Fink asserted constitutional violations based on 1) the racial composition of his Jury and 2) the ineffective assistance of counsel.  As to his second claim, Fink alleged the ineffective assistance of counsel because his attorney had failed to question potential Jurors during voir dire about their racial biases, and because his attorney had failed to question Fink, during direct examination, about his personal background, which Fink asserted would have enhanced his credibility before the Jury.  The Hennepin County District Court denied Fink's requested relief without a Hearing, finding that Fink's claims had "already been decided on direct appeal or were known or should have been

- 4 -

known but [were] not raised on direct appeal." See, <u>Fink v. State</u> ("<u>Fink II</u>"), 2003 WL 21529838 at *1 (Minn.App., July 8, 2003)(quoting the District Court Order)[alteration in original].

Fink appealed to the Minnesota Court of Appeals, which affirmed in part, noting that Fink had already challenged the racial composition of the Jury on direct appeal. <u>Id.</u> The Court, however, reversed the District Court, and remanded for an Evidentiary Hearing on Fink's claim of ineffective assistance of counsel.    <u>Id.</u>   The Court of Appeals found that, although Fink should have been aware of that claim at the time of his direct appeal, his failure to raise his claim of ineffective assistance of counsel was inadvertent, and fairness required its consideration.   <u>Id.</u> at *3.   The Minnesota Supreme Court denied Fink's Petition for Review of the Court of Appeals decision on September 16, 2003.

On remand from the Minnesota Court of Appeals, the Hennepin County District Court held a Hearing at which Fink testified, as well as Mark Bearss ("Bearss"), who is the Hennepin County Public Defender who represented Fink in his criminal Trial. Fink also called Joseph Margulies ("Margulies"), a criminal defense lawyer, as an expert witness on the matter of Bearss' assistance of counsel.  See, Transcript of Post-Conviction   Hearing   ("Post-Conviction   Hearing   Tr."),      <u>Appendix   to</u>

Respondent's Memorandum in Opposition,  Docket No. 7, at 2.  Fink also offered

one Exhibit, which was a compilation of the written responses to questions 68 and 69

-- the questions relating to racial bias -- from the Jurors who served at Fink's Trial.

Id. at 15-16, 73-88.

After the Hearing, the District Court determined that Bearss had made a

reasonable strategic decision to forego questions about racial bias -- beyond those

written questions in the standard Jury questionnaire -- in order to avoid offending and

alienating the Jurors.  The District Court also found that Bearss made a reasonable

strategic decision to focus Fink's testimony on the events immediately surrounding his

alleged crime, rather than his personal background, because Bearss did not want to

"open the door" for the prosecutor to introduce harmful information about Fink that

might do additional damage to Fink's credibility.   See, Fink III, supra at *2-4.

Accordingly, the District Court denied Fink's request for Post-Conviction relief.  Id.

Fink again filed an appeal from the District Court's decision, based on the

following assertions:  1) the District Court applied the wrong standard of proof; 2) the

District Court abused its discretion by declining to consider the expert testimony

proffered by Fink; and 3) the District Court erred in denying Post-Conviction relief for

Fink's claim of ineffective assistance of counsel.  See, Fink III, supra at *4-6.  The

Minnesota Court of Appeals affirmed the District Court, finding nothing in the Record to indicate that the District Court applied the wrong standard of proof.  <u>Id.</u> at *4.  The Court also found that the District Court had not abused its broad discretion to determine the credibility of Margulies -- Fink's expert witness -- including, ultimately, the discretion to disregard the expert's testimony.  <u>Id.</u> at *5.  Finally, the Court held that Fink had failed to establish a claim of ineffective assistance of counsel.  <u>Id.</u> at *6.  The Court agreed with the District Court that Bearss had made reasonable strategic decisions with regard to both voir dire, and Fink's testimony.  <u>Id.</u>  The Minnesota Supreme Court denied Fink's Petition for Review on September 27, 2006.

In his Federal Petition, which he filed on September 29, 2006, Fink raises the following grounds for Habeas relief:  1) that the Minnesota Courts misapplied the standard outlined by the United States Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 694 (1984), in denying Fink's claim of ineffective assistance of counsel; and 2) that the composition of the venire violated Fink's right to a Trial by Jury because the Jury did not contain a fair cross-section of the community.

### III.  <u>Discussion</u>

A.    <u>Standard of Review</u>.   "[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of

a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Title 28 U.S.C. §2254(a). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). As a result, before a Writ may issue, the Petitioner must establish that the State's exercise of custody over his person is an affront to the Constitution, a Federal law, or a Federal treaty. Id.; see also, Lupien v. Clarke, 403 F.3d 615, 619 (8th Cir. 2005); Newton v. Kemna, 354 F.3d 776, 782 (8th Cir. 2004), cert. denied, 543 U.S. 979 (2004); Robinson v. Leapley, 26 F.3d 826, 829 (8th Cir. 1994).

In 1996, Congress restricted the scope of a Federal Court's review of Habeas Petitions, where the underlying claims were adjudicated in State Court. See, Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996)("AEDPA"); see also, Lockyer v. Andrade, 538 U.S. 63, 70 (2003) ("AEDPA circumscribes a federal habeas court's review of a state court decision."). A Federal Court's authority to vitiate State Court decisions, by the granting of a Writ of Habeas Corpus, is now limited to the narrow class of claims which have been fully exhausted in the State Courts, and which involve an adjudication that either:

>    (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

Title 28 U.S.C. §2254(d).

The Supreme Court has determined that the "contrary to," and "unreasonable application" clauses of Section 2254(d)(1), present two separate grounds on which a Federal Court may grant Habeas relief to claims adjudicated in the State Courts.  See, Williams v. Taylor, 529 U.S. 362 (2000).  The Court has explained, as follows:

>    Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decide[d] a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case.

Id. at 412-13.

The Court further explained that a consideration of a State Court's decision, under the "unreasonable application" clause, requires a Federal Court to "ask whether the state

court's application of clearly established federal law was objectively unreasonable." Id. at 409; see also, <u>Davis v. Norris</u>, 423 F.3d 868, 874-75 (8th Cir. 2005); <u>LaFrank v. Rowley</u>, 340 F.3d 685, 689 (8th Cir. 2003), cert. denied, 541 U.S. 950 (2004).

Under this heightened standard of review, a Federal Court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly," but "[r]ather, that application must also be unreasonable." <u>Id.</u> at 411; see also, <u>Davis v. Norris</u>, supra at 875; <u>Siers v. Weber</u>, 259 F.3d 969, 972-73 (8th Cir. 2001)(examining the impact of <u>Williams</u> on Habeas proceedings), cert. denied, 534 U.S. 1138 (2002); <u>Newman v. Hopkins</u>, 247 F.3d 848, 850-51 (8th Cir. 2001), cert. denied, 536 U.S. 915 (2002); <u>Copeland v. Washington</u>, 232 F.3d 969, 973 (8th Cir. 2000), cert. denied, 532 U.S. 1024 (2001).

As a consequence, <u>Williams</u> affirmed the distinction, which had previously been drawn by several Circuit Courts, that the "contrary to" clause was to be used in cases addressing pure questions of law and mixed questions of law and fact, whereas the "unreasonable application" clause addressed factual determinations.  See, e.g., <u>Evans v. Rogerson</u>, 223 F.3d 869, 872 (8th Cir. 2000)(the "in custody" determination for <u>Miranda</u> purposes is a question of law subject to the first prong of Section 2254(d),

- 10 -

when the relevant facts are undisputed).  Therefore, when a petitioner argues that the State Court improperly applied clearly established Supreme Court law to a particular set of facts, the Federal Courts may not grant a Writ absent a finding that such an application was unreasonable.

Additionally, Section 2254(e)(1) retains a presumption of correctness for all purely factual determinations rendered by a State Tribunal, which can, as a result, only be rebutted by the production of clear and convincing evidence to the contrary.  See, Guinn v. Kemna, 489 F.3d 357, 359 (8th Cir. 2007); Lupien v. Clarke, supra at 618; Green v. Norris, 394 F.3d 1027, 1029 (8th Cir. 2005).  Despite this presumption, Section 2254(d)(2) authorizes the issuance of a Writ if the State Court Judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001); McDonald v. Bowersox, 101 F.3d 588, 592 (8th Cir. 1996)("[W]e presume state court findings of fact to be correct in habeas proceedings unless the petitioner establishes, the respondent admits, or the record shows otherwise."), cert. denied, 521 U.S. 1127 (1997).  Thus, "[f]actual findings by the state court 'shall be presumed to be correct,' a presumption that will be rebutted only 'by

clear and convincing evidence.'"  <u>Kinder v. Bowersox</u>, supra at 538, citing <u>Title 28 U.S.C. §2254(e)(1)</u>.

B.   <u>Legal Analysis</u>.   As we have noted, Fink seeks Habeas relief on the grounds that: 1) he was deprived of his Sixth Amendment right to effective assistance of counsel; and 2) he was deprived of his right, under the Sixth and Fourteenth Amendments, to a Trial by Jury.  The State opposes the Petition on its merits, and we address each of Fink's contentions in turn.

   1.   <u>Ineffective Assistance of Counsel</u>.

      a.   <u>Standard of Review</u>.  "To be eligible for habeas relief based on ineffective assistance of counsel [the Petitioner] must meet the two part test announced in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."  <u>Winfield v. Roper</u>, 460 F.3d 1026, 1033 (8th Cir. 2007), cert. denied, --- U.S. ---, 127 S.Ct. 2256 (2007); <u>Smith v. United States</u>, 182 F.3d 1023, 1025 (8th Cir. 1999).  Under that test, the Petitioner must first show "that counsel's performance fell below an objective standard of reasonableness," and "then show that the deficient performance prejudiced his defense."  <u>Winfield v. Roper</u>, supra at 1033, citing <u>Strickland v. Washington</u>, supra at 687-88; see also, <u>Smith v. United States</u>, supra at 1025-26; <u>Siers v. Weber</u>, supra at 974.

- 12 -

"Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." <u>Bucklew v. Luebbers</u>, 436 F.3d 1010, 1016 (8th Cir. 2006), cert. denied, --- U.S. ---, 127 S.Ct. 725 (2006), citing <u>Strickland v. Washington</u>, supra at 689. In order to show prejudice, the Petitioner must prove "a reasonable probability that, but for counsel's ineffectiveness, the result would have been more favorable to [the Petitioner.]" <u>Winfield v. Roper</u>, supra at 1033, citing <u>Strickland v. Washington</u>, supra at 690-91; see also, <u>Siers v. Weber</u>, supra at 974. The Court must look at the evidence before the Judge, or Jury, as a whole, in order to determine the effect of any alleged attorney errors. See, <u>Strickland v. Washington</u>, supra at 695. The ultimate focus of the inquiry is fundamental fairness in the proceeding, with relief granted only where there has been a breakdown in the adversarial process. <u>Id.</u> at 696.

Finally, "there is no reason for a court deciding an ineffective assistance claim to * * * address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Strickland v. Washington</u>, supra at 697; see also, <u>Morales v. Ault</u>, 476 F.3d 545, 551 n. 4 (8th Cir. 2007)("Because we conclude that the state courts' application of <u>Strickland</u>'s prejudice prong was not unreasonable, however, we need not address its application of <u>Strickland</u>'s performance prong"), citing <u>Blankenship</u>

- 13 -

v. United States, 159 F.3d 336, 338 (8th Cir.1998); Davis v. Norris, 423 F.3d 868, 877 (8th Cir. 2005).

        b.    Legal Analysis.  Fink argues that he was deprived of his Sixth Amendment right to effective assistance of counsel because his attorney failed to conduct a thorough voir dire of potential Jurors on their racial biases, and his attorney failed to ask Fink about his personal background during his testimony. Specifically, Fink contends that the Minnesota Court of Appeals erred in finding that the Hennepin County District Court correctly applied the Strickland test in denying Fink's Petition for Post-Conviction relief, with respect to his claim of ineffective assistance of counsel.  See, Petition for Writ of Habeas Corpus, Docket No. 1, Attachment A.  Fink contends that his attorney's Trial strategy was objectively unreasonable.  Id.

As a preliminary matter, in applying the Strickland test, the Minnesota Court of Appeals applied case law which is consistent with clearly established Federal law in analyzing Fink's claims for ineffective assistance of counsel.  See, Fink III, supra at *6.  Therefore, our inquiry is limited to whether the State Court's application of the Strickland test, to Fink's claims, was unreasonable.  See, Honeycutt v. Roper, 426 F.3d 957, 960 (8th Cir. 2005)(noting that, when a State Court properly identifies the

Strickland test as the applicable standard for ineffective assistance of counsel claims, the Federal Court's review is limited to the reasonable application of the law to the facts), cert. denied, --- U.S. ---, 126 S.Ct. 2353 (2006); Title 28 U.S.C. §2254(d)(1).

Fink's first contention is that his attorney ineffectively represented him by failing to orally question potential Jurors about their racial biases, given that Fink, who is an African-American, was on Trial for killing a white man.  In support of his argument, Fink cites Turner v. Murray, 476 U.S. 28, 36-37 (1986), in which the Supreme Court held that "a capital defendant accused of an interracial crime is entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias."  See, Petitioner's Memorandum in Response, Docket No. 11, at 6.  The Turner Court, however, went on to state as follows:

> [T]he mere fact that petitioner is black and his victim white does not constitute a 'special circumstance' of constitutional proportions.  What sets this case apart from Ristaino [v. Ross, 424 U.S. 589 (1976)], however, is that in addition to petitioner's being accused of a crime against a white victim, the crime charged was a capital offense.

Turner v. Murray, supra at 33.

In Ristaino v. Ross, supra, the Supreme Court rejected the First Circuit's finding that a case involving a black defendant, and a white victim, would always "suggest a significant likelihood that racial prejudice might infect [a criminal] trial," id. at 598,

especially where the Trial Court made a "more generalized but thorough inquiry into the impartiality of the veniremen." Id.

Instead, particular inquiry of the venire members into racial prejudices is only required when, "under all of the circumstances presented there was a constitutionally significant likelihood that, absent questioning about racial prejudice," the State would not impanel an impartial Jury. Ristaino v. Ross, supra at 596, citing Ham v. South Carolina, 409 U.S. 524 (1973); see also, United States v. Borders, 270 F.3d 1180, 1182 (8th Cir. 2001)("[A] trial court's failure to inquire as to prospective jurors' ethnic or racial prejudices is constitutionally infirm only if ethnic or racial issues are inextricably intertwined with conduct of the trial, or if the circumstances in the case suggest a significant likelihood that racial prejudice might infect the defendant's trial."); United States v. Cordova, 157 F.3d 587, 595 (8th Cir. 1998)(same).

In Fink's case, Bearss -- his defense counsel -- did ask for two questions on race to be included in the written Juror questionnaire. See, Order and Memorandum of Hennepin County District Court ("District Court Order"), Appendix to Respondent's Memorandum in Opposition, Docket No. 7, at 7. Bearss testified at Fink's Post-Conviction Hearing that the Jurors' answers to those written questions did not alert him to any concerns about potential bias. Id.; see also, Post-Conviction

Hearing Tr., supra at 18.  After reviewing those written responses, the District Court agreed, and found that "the answers given by all thirteen selected jurors reflected a positive attitude and an open mind about persons from a different racial or ethnic background."  Id. at 8.  The District Court concluded that Bearss' "decision to rest on the information in the questionnaire was a matter of trial strategy," and "did not fall below an objective standard of reasonableness[.]"  Id. at 9.

We concur with the conclusion of the Hennepin County District Court, that the written questionnaire was sufficient to inquire generally about racial biases.  "When examining whether a potential juror holds any racial or ethnic prejudices the questions do not have to be of a specific type, neither must the court ask any particular questions."  United States v. Ortiz, 315 F.3d 873, 889 (8th Cir. 2002), cert. denied, 538 U.S. 1042 (2003), citing United States v. Bear Runner, 502 F.2d 908, 912 (8th Cir. 1974).  "[G]eneral questioning on the subject of race is sufficient[.]"  Id., citing United States v. Thompson, 490 F.2d 1218, 1222 (8th Cir. 1974).

Moreover, the District Court's finding as to Bearss' Trial strategy -- i.e., his decision to forego further oral questioning of the Jury on racial bias -- is entitled to a presumption of correctness.  See, Title 28 U.S.C. §2254(e)(1); Lupien v. Clarke, supra at 618; see also, Ellefson v. Hopkins, 5 F.3d 1149, 1151 (8th Cir. 1993)(State Court

finding of Trial strategy is entitled to presumption of correctness, and Federal Habeas Court will not second-guess Trial strategy).  We further agree with both the District Court, and the Minnesota Court of Appeals, that this strategic decision by Bearss was not objectively unreasonable under the Strickland test.  See, District Court Order, supra at 9; Fink III, supra at *6. Given that Bearss believed race was not the primary issue, his decision to forego further questioning was reasonable in order to avoid alienating the Jurors.  See, Fink III, supra at *6 ("[P]robing jurors too invasively about bias might inadvertently expose a defendant to now-offended jurors."); see also, United States v. Cordova, supra at 595 ("[T]he court must balance competing concerns," and "[t]he court must admonish against racial bias, but must not overemphasize race.").  Even Margulies, Fink's expert witness, acknowledged the risk of offending or alienating Jurors by appearing to focus on race during voir dire.  See, Post-Conviction Hearing Tr., supra at 93.

In its responsive Memorandum, the State notes that Fink relied upon United States v. Bear Runner, supra, in his argument before the Minnesota Court of Appeals. See, Respondent's Memorandum in Opposition, Docket No. 5, at 7; see also, Fink III, supra at *7.  We agree with the Minnesota Court of Appeals that the facts of United States v. Bear Runner -- in which the highly-publicized, racially-charged

- 18 -

occupation of Wounded Knee, and the resulting violence between American Indians and law enforcement personnel, raised a serious concern about venire members' potential prejudice against an American Indian defendant -- are distinguishable from the facts of Fink's case. See, United States v. Bear Runner, supra at 909.

The Bear Runner Court held that a general inquiry about bias, made to the venire members as a group, was insufficient to ensure the selection of an impartial Jury in such extenuating circumstances. Id. at 911, 912-13. By contrast, in Fink's case, where no external event created such particularized concern about community prejudice, and where the written questionnaires were completed individually by potential Jurors, we agree that the less-intrusive inquiry was sufficient to uncover racial prejudice among the venire members. In our considered view, neither the District Court, nor the Minnesota Court of Appeals, was unreasonable in applying the Strickland test to Bearss' performance.

Since we do not find that Bearss performed deficiently, we need not decide whether Fink can prove a reasonable probability of prejudice. See, Strickland v. Washington, supra at 697; Morales v. Ault, supra at 551 n. 4; Davis v. Norris, supra at 877; Blankenship v. United States, supra at 338. However, we note that Fink has also failed to show any reasonable probability that he would have been acquitted, or

even convicted of a lesser crime, if Bearss had asked additional questions about racial bias during voir dire.  Fink has offered no evidence that the Jury convicted him simply because he was accused of killing a white victim.  For example, there was no evidence that either Fink, or the white victim, employed any racial epithets, or harbored any racial animus such as to provoke the altercation between them.  Fink was the white victim's ordinary drug source, and their racial differences did not prevent their prior interactions.

Nor is there any evidence that the selected Jurors harbored racial biases that precluded them from rendering an impartial Judgment, and in fact, more intensive questioning of the venire members about race could have resulted in the alienation of the Jury, and could have been more damaging to Fink's case, in which his defense relied upon his credibility and rapport with the Jury.  We find nothing to indicate "a probability sufficient to undermine confidence in the outcome" of Fink's Trial on the racial question.  See, <u>Strickland v. Washington</u>, supra at 694.  Accordingly, we find the District Court correctly applied the <u>Strickland</u> test in ruling that Fink had failed to prove a probability of prejudice to his case owing to Bearss' performance as defense counsel.  Therefore, we find that the Hennepin County District Court, and the Minnesota Court of Appeals' application of the <u>Strickland</u> test, to the factual

circumstances involved here, to be entirely reasonable, and we conclude that Fink's claim for ineffective assistance of counsel, on that basis, is without merit.

Similarly, we find that the District Court, and the Court of Appeals, reasonably applied the <u>Strickland</u> test to Fink's claim that his attorney erred in failing to ask Fink about his personal background during Fink's direct examination. Fink contends that his positive work and school history would have bolstered his credibility with the Jury, thereby lending credence to his claim of self-defense. See, <u>Petitioner's Memorandum in Response</u>, supra at 8-9. The State Courts concluded that Bearss' decision to focus on the minutes surrounding Fink's alleged crime was a reasonable one, since asking Fink about his "positive" personal history would have opened the door for the prosecution to introduce more damaging personal evidence. See, <u>District Court Order</u>, supra at 9-10; <u>Fink III</u>, supra at *2, *8.

As we have noted, to be entitled to Habeas relief, Fink must demonstrate that the State Court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court. Fink has failed to cite any Supreme Court decision, or other precedent, that would establish that Bearss' failure to ask about Fink's personal background violated Fink's

constitutional right to effective assistance of counsel, and our own research has uncovered no such authority.

Under analogous circumstances, however, the Supreme Court has addressed whether a defense attorney's performance is deficient when he or she fails to introduce mitigating evidence to a Jury, during sentencing, in a capital Trial.  See, e.g., <u>Wiggins v. Smith</u>, 539 U.S. 510, 526 (2003)(counsel's decision not to investigate mitigating evidence was unreasonable where it "thoroughly resulted from inattention, not reasoned strategic judgment"); <u>Williams v. Taylor</u>, supra at 396 (though some additional evidence would have been unfavorable, "failure to introduce the comparatively voluminous amount of evidence that did speak in Williams' favor was not justified by a tactical decision to focus on Williams' voluntary confession"); <u>Burger v. Kemp</u>, 483 U.S. 776, 795 (1987)(finding Trial counsel made a reasonable, strategic decision "that an explanation of petitioner's history would not have minimized the risk of the death penalty"); <u>Darden v. Wainwright</u>, 477 U.S. 168, 186 (1986)(Trial counsel made a reasonable, strategic decision to forego any mitigating evidence, where "[a]ny attempt to portray petitioner as a nonviolent man would have opened the door for the State to rebut with evidence of petitioner's prior convictions"); <u>Strickland v. Washington</u>, supra at 699 (Trial counsel made a reasonable professional judgment to

restrict testimony on character in order to "ensur[e] that contrary character and psychological evidence and respondent's criminal history, which counsel had successfully moved to exclude, would not come in").

The failure to present mitigating evidence, during the sentencing phase of a capital case, is not, concededly, the same as Bearss' alleged failure to present positive character evidence in support Fink's claim of self-defense, but the referenced cases support our finding that Bearss made a reasonable, strategic decision not to "open the door" to the prosecution's damaging character evidence.  While, perhaps, another attorney might harbor a different view, we are unable, on this Record, to see any unconstitutional violation on that ground.  Counsel's exercise of litigation strategy is entitled to a presumption of correctness, and we may not second-guess Trial counsel's strategic decisions.  See, Title 28 U.S.C. §2254(e)(1); Lupien v. Clarke, supra at 618; Ellefson v. Hopkins, supra at 1151.

As highlighted by the State in its Memorandum -- and as noted by both the Hennepin County District Court, and the Minnesota Court of Appeals -- Bearss feared that asking Fink about his personal background would "open the door" to the prosecution on cross-examination, thereby permitting the prosecutor to impeach Fink's credibility with harmful background information, including Fink's prior felony

- 23 -

conviction, as well as his termination, for cause, from gainful employment, and his subsequent full-time occupation as a drug dealer. See, Respondent's Memorandum in Opposition, supra at 8-9; see also, Post-Conviction Hearing Tr., supra at 33-34, 51-56; District Court Order, supra at 9; Fink III, supra at *8.

Given the potential damage to Fink's defense, if the prosecution were permitted to introduce such damaging character evidence, the District Court found that Bearss' decision was well-within the ambit of permissible Trial strategy.  See, District Court Order, supra at 9 ("If the jury would have heard of this portion of [Fink's] background, his credibility would undoubtedly have suffered immeasurably."); compare,  Middleton v. Roper, 455 F.3d 838, 846 (8th Cir. 2006)(Habeas petitioner contended that his Trial counsel should have called former employers, and family members, to provide favorable character evidence; Court deferred to strategic decision of defense counsel, who had thoroughly reviewed evidence and, "after consideration chose not to present it"), cert. denied,  --- U.S. ---,  127 S.Ct. 980 (2007).

The District Court also noted that Fink's mother and wife, when called by the prosecution, provided some of the general background information that Fink asserts would have been so useful to his credibility.  Id.; see also, Post-Conviction Hearing Tr., supra at 24, 26.  Ultimately, the District Court found that Bearss' "sound and

reasonable decision to limit his questions posed to [Fink] to the events and moments leading up to the shooting" negated Fink's claim of an ineffective assistance of counsel under Strickland.   See, District Court Order, supra at 10.   Since we find that the District Court -- and the Minnesota Court of Appeals, in affirming the denial of Post-Conviction relief -- correctly applied the Strickland test, we find no basis for Fink's claim of an ineffective assistance of counsel.

Again, while we need not reach the prejudice prong of the Strickland test, we note that Fink has failed to show any reasonable probability that he would have obtained a more favorable outcome if Bearss had asked him about his personal background during his direct examination.   Even if Fink had received the opportunity to share his positive personal background with the Jury -- e.g., his work and school history, as well as his family's impressions of his peaceful nature -- that background information would have been outweighed by the damaging information available to the prosecution, which would have been used to further impeach Fink's credibility.   See, Post-Conviction Hearing Tr., supra at 33-34, 51-56; District Court Order, supra at 9; compare Darden v. Wainwright, supra at 186; Strickland v. Washington, supra at 699; cf., Williams v. Taylor, supra at 396.

Moreover, the Jury had the opportunity to hear some of Fink's positive personal background information, through the testimony of his wife and mother, and that testimony did not persuade the Jury to credit Fink's claim of self-defense over the rest of the State's evidence. <u>Id.</u> at 11-12. Even if Fink could have testified, himself, about his background, it is unlikely that the Jury would have been more inclined toward an acquittal, since the Jury would then have been exposed to hear, as well, the State's impeachment evidence concerning Fink's criminal history, and employment background. Accord, <u>District Court Order</u>, supra at 9. As a result, Fink has failed to satisfy the prejudice prong of the <u>Strickland</u> test, and his claim must fail.

In sum, in their analysis of Fink's claim as to an ineffective assistance of counsel, the Hennepin County District Court, and the Minnesota Court of Appeals, applied case law which was plainly consistent with clearly established Supreme Court law, and their application of that law to their factual findings was also reasonable. Thus, we recommend that Fink's Petition for Habeas Corpus relief, on the ground of ineffective assistance of counsel, be denied.

2.      Right to Trial by Jury.

a.      Standard of Review.   "[T]he American concept of the jury trial contemplates a jury drawn from a fair cross section of the community."   Taylor v. Louisiana, 419 U.S. 522, 526 (1975).   Since a "trial by jury in criminal cases is fundamental to the American scheme of justice," Duncan v. Louisiana, 391 U.S. 145, 149 (1968), the Fourteenth Amendment incorporates the Sixth Amendment's guarantee of a right to Trial by Jury in criminal cases by the States.   Id.   To make a successful prima facie constitutional challenge to the method of Jury selection, a Petitioner must establish the following:

> (1)  that the group alleged to be excluded is a 'distinctive'
> group in the community; (2) that the representation of this
> group in venires from which juries are selected is not fair
> and reasonable in relation to the number of such persons in
> the community; and (3) that this underrepresentation is due
> to systematic exclusion of the group in the jury-selection
> process.

Duren v. Missouri, 439 U.S. 357, 364 (1979); see also, United States  v. Sanchez, 156 F.3d 875, 879 (8th Cir. 1998)(citing same); Phea v. Benson, 95 F.3d 660, 662 (8th Cir. 1996)(same), cert. denied, 519 U.S. 976 (1996).

Under the first requirement of the Duren test, "[a] group of people is distinct when they have a shared attribute that defines or limits their membership, and when they share a community of interest."   United States v. Black Bear, 878 F.2d 213, 214 (8th

- 27 -

Cir. 1989)(citations omitted).    "[B]lacks constitute a 'distinctive' group in the Minnesota community." United States v. Womack, 985 F.2d 395, 397 (8th Cir. 1993), cert. denied, 510 U.S. 902 (1993); see also, United States v. Garcia, 991 F.2d 489, 491 (8th Cir. 1993); Roberson v. Hayti Police Dep't, 241 F.3d 992, 996-97 (8th Cir. 2001)(applying Duren test to claim of systematic exclusion of black Jurors).

As to the second and third requirements of the Duren test, "a defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which petit jurors are drawn." United States v. Freeman, 514 F.2d 171 (8th Cir. 1975), quoting Swain v. Alabama, 380 U.S. 202, 208 (1965); see also, United States v. Garcia, 991 F.2d at 491 (Petit Juries need not "mirror the community and reflect the various distinctive groups in the population"), quoting Taylor v. Louisiana, supra at 538. "Evidence of a discrepancy on a single venire panel cannot demonstrate systematic exclusion." United States v. Womack, supra at 397, quoting Singleton v. Lockhart, 871 F.2d 1395, 1399 (8th Cir. 1989), cert. denied, 493 U.S. 874 (1989).    Stated otherwise, "[a] numerical disparity alone does not violate any of [the Defendant's constitutional] rights and thus will not support a challenge to the [method of Jury pool selection]." United States v. Garcia, 991 F.2d at 492.

- 28 -

b.    <u>Legal Analysis</u>.  Fink contends that he was denied his right, under the Sixth and Fourteenth Amendments, to a Trial by Jury because his Petit Jury was composed of all white jurors, because the venire for his Trial was composed of all white jurors, and because the weekly venire, from which his Jury pool was drawn, was composed of only a 7.6% minority.[2]   See, <u>Petitioner's Memorandum in Response</u>, supra, Appendix at C-1 to C-4, D-1.  Fink has submitted, as an Exhibit, excerpted United States Census information from 2000 -- the year following his Trial -- as well as demographic information about his Petit Jury, and the venire from which his Petit Jury was drawn.  According to these statistics, in 2000, the minority population of Hennepin County, that was 18 years of age or older -- that is, old enough to serve on a Jury -- was 16%.  See, <u>Census 2000 Redistricting Data for Congressional District 4, Petitioner's Memorandum in Response</u>, supra, Appendix at B.

Fink also presents evidence that, from 1994 to 1999, the weekly venire in Hennepin County averaged only 8.9% minority members, and that the average, in 1999

_____

[2]Although we note that Fink identifies himself as a black man, see, <u>Petitioner's Memorandum in Response</u>, <u>Docket No. 11</u>, at 2, in his arguments, Fink focuses on the overall minority composition of his Jury pool, rather than focusing on the percentage of black Jurors.  <u>Id.</u> at 3-4.  We will follow suit and focus on the overall minority representation of his Jury.

-- the year of Fink's Trial -- was 9.1%.  See, <u>Petitioner's Memorandum in Response</u>, supra, Appendix at F.   Finally, Fink presents evidence that the weekly venire, from August 23, 1999, through November 8, 1999, in Hennepin County, ranged from 6.7% minority members, to 11.9% minority members.[3]  See, <u>Petitioner's Memorandum in Response</u>, supra, Appendix at E.   Based on this evidence, Fink asserts that his constitutional right to a Jury, "drawn from a fair cross section of the community," <u>Taylor v. Louisiana</u>, supra at 526, was violated because the weekly venire -- if not his Trial venire -- should have been 16% minority members, rather than only 7.6%.  See, <u>Petitioner's Memorandum in Response</u>, supra at 3-4.

In Hennepin County, the Jury pool is "summoned from a source list compiled from the county voter registration list, drivers' license list, motor vehicle registration list, and state identification card list."  <u>Hennepin County v. Perry</u>, 561 N.W.2d 889, 895 (Minn. 1997)(Grand Jury); see also, <u>Respondent's Memorandum in Opposition</u>, supra at 11 (same procedure is used for Petit Jury pool).   The State notes in its Memorandum that not all minority residents of Hennepin County are necessarily eligible for Jury duty, since they must satisfy several other requirements, including

---

[3]Fink misstates this range in his Memorandum.  See, <u>Petitioner's Memorandum in Response</u>, supra at 3.

United States citizenship, and English language proficiency.   See, <u>Minnesota Jury Management Rule 808(b)(1), (b)(4)</u>; see also, <u>Respondent's Memorandum in Opposition</u>, supra at 13 n.2.  This, the State asserts, accounts for, at least in part, the difference between the Census numbers, and the actual minority representation in Hennepin County Jury pools.  See, <u>Respondent's Memorandum in Opposition</u>, supra at 13 n. 2.

At the outset of our analysis, we note that the Eighth Circuit has consistently approved the use of voter-registration lists for the selection of Jury pools.  See, <u>United States v. Morin</u>, 338 F.3d 838, 844 (8th Cir. 2003); <u>United States v. Garcia</u>, 991 F.2d at 492; see also, <u>Roberson v. Hayti Police Dep't</u>, supra at 997 ("Absent proof that obstacles are placed in the path of blacks attempting to register to vote, voter registration lists may be used as the **sole** source for selecting jury pools.")[emphasis added]; <u>United States v. Sanchez</u>, supra at 879 (same).  Moreover, Hennepin County's method of supplementing the voter-registration lists with drivers' license lists, motor vehicle registration lists, and State identification card lists, presumably "to increase minority representation," <u>United States v. Rogers</u>, 73 F.3d 774, 777 n. 2 (8th Cir. 1996)(Heaney, C.J.), cert. denied, 517 U.S. 1239 (1996), is not constitutionally

required.  See, United States v. Freeman, supra at 173;  Roberson v. Hayti Police Dep't, supra at 997.

Although the number of minorities in Hennepin County's weekly venire for Fink's Trial was less than the number of minorities -- even the number of minorities over the age of 18 -- in the general population, "[e]thnic and racial disparities between the general population and jury pools do not by themselves invalidate the use of voter registration lists and cannot establish the 'systematic exclusion' of allegedly under-represented groups." United States v. Sanchez, supra at 879; see also, United States v. Morin, supra at 844 (quoting same); United States v. Garcia, 991 F.2d at 492 ("[T]he mere fact that one identifiable group of individuals votes in a lower proportion than the rest of the population does not make a jury selection system illegal or unconstitutional"), quoting United States v. Clifford, 640 F.2d 150, 156 (8th Cir. 1981).

As a consequence, Fink's demonstration of a numerical disparity, alone, does not prove systematic exclusion under the third prong of the Duren test.  Although many have expressed concern over the fairness of the method, it is black letter law that "numerical disparities resulting from the use of voter-registration lists do not violate a defendant's Sixth Amendment rights." United States v. Ireland, 62 F.3d 227, 231 (8th Cir. 1995)(Grand Jury), citing United States v. Garcia, 991 F.2d at 492 (Petit Jury);

see also, United States v. Sanchez, supra at 879.  Beyond a numerical disparity, Fink

must demonstrate that the voter-registration qualifications were suspect, or that the

Jury-selection procedure was administered in a discriminatory manner.  Id.  He has

made no such showing here.

        At most, Fink has proved an underrepresentation of minority Jurors in his case,

but that does not constitute a constitutional violation.  See, Phea v. Benson, supra at

662 ("Evidence of a discrepancy on a single venire panel cannot demonstrate

systematic exclusion"); see also, Roberson v. Hayti Police Dep't, supra at 997 (no

proof of systematic exclusion simply because Jury pool was devoid of blacks for

Section 1983 Plaintiff's Trial).  As noted above, Fink has no constitutional right to a

Petit Jury that matches the racial makeup of the community.  See, Taylor v. Louisiana,

supra at 538; Swain v. Alabama, supra at 208.  Therefore, on this Record, Fink has

not demonstrated a violation of the Sixth and Fourteenth Amendments.

        When Fink raised this precise claim during his direct appeal, the Minnesota

Court of Appeals noted that Fink was entitled to a venire that reflected a "fair cross-

section of the community[.]"   Fink I, supra at *3.  The Court found, however, that

Fink had failed to prove a systematic exclusion of minorities from the Jury pool over

a period of time, and therefore, it denied his claim of a constitutional violation.  See,

- 33 -

Fink I, supra at *3.  When he again raised this claim in his Petition for Post-Conviction relief in the State Courts, the Minnesota Court of Appeals refused to reconsider it. See, Fink II, supra at *1.

Although the Minnesota Court of Appeals, in Fink I, did not specifically cite the Duren test, we note that it cited State v. Willis, supra, in its analysis of Fink's Jury Trial claim.  There, the Minnesota Supreme Court applied both Taylor v. Louisiana, supra, and Duren v. Missouri, supra, in analyzing claims nearly identical to those in Fink's case; namely, that the defendant's "Sixth Amendment right to a fair trial and his right to Equal Protection were violated because African-Americans were underrepresented on the Hennepin County grand jury that indicted him and the jury venire from which the petit jury was chosen."  State v. Willis, supra at 700.  Moreover, even though it did not cite directly to Duren v. Missouri, the Minnesota Court of Appeals correctly considered whether Fink had proved a systematic exclusion of minorities, from the Hennepin County Jury pool, when it considered his claim on direct appeal.  See, Fink I, supra at *3.

Accordingly, we find that the Minnesota Court of Appeals applied case law consistent with clearly established Federal law.  See, Duren v. Missouri, supra at 364. Based upon our analysis, we agree with the State Courts that Fink failed to allege a

- 34 -

systematic exclusion of minorities from the Hennepin County Jury pool.[4]   Thus, we find that the Minnesota Courts of Appeals' application of law to the factual findings was also reasonable, see, Title 28 U.S.C. §2254(d)(1); Williams v. Taylor, supra at 412-13, and Fink's Jury Trial claim fails.   Therefore, we recommend that this aspect of his Petition be dismissed.

>    3.    Equal Protection.

>    Although Fink did not expressly raise an Equal Protection violation in his Petition for Habeas relief, both the State, and Fink, advert to Equal Protection in their supporting Memoranda as those Memoranda relate to the racial composition of Fink's Jury.   See, Respondent's Memorandum in Opposition, supra at 12; see also, Petitioner's Memorandum in Response, supra at 2-6, 10.   In the interest of completeness, therefore, we briefly address that issue.

---

[4]Since we find that Fink failed to allege a systematic exclusion of minorities from the Hennepin County Jury pool, we need not address the second prong of the Duren test.  See, United States v. Morin, 338 F.3d 838, 843 (8th Cir. 2003); Phea v. Benson, 95 F.3d 660, 662 (8th Cir. 1996), cert. denied, 519 U.S. 976 (1996); United States v. Garcia, 991 F.2d 489, 491 (8th Cir. 1993).  We note, however, that Fink submitted evidence, the accuracy of which is undisputed by the State, that the weekly venire in Hennepin County is consistently and significantly less diverse than the overall adult population of the County.  See, Petitioner's Memorandum in Response, supra, Appendix at B, E, F.  We express no opinion on whether Fink's evidence satisfies the second prong of the Duren test.

a.   <u>Standard of Review</u>.   "[R]acial discrimination in jury selection offends the Equal Protection Clause" of the Fourteenth Amendment.   <u>Batson v. Kentucky</u>, 476 U.S. 79, 85 (1986), citing <u>Strauder v. West Virginia</u>, 100 U.S. 303 (1880).   A Defendant has "the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria[.]"   <u>Id.</u> at 85-86 (citations omitted).   However, "a defendant has no right to a 'petit jury composed in whole or in part of persons of his own race.'"   <u>Id.</u> at 85, quoting <u>Strauder v. West Virginia</u>, supra at 305.   Instead, "[t]he Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race."   <u>Id.</u> at 86, citing <u>Strauder v. West Virginia</u>, supra at 305.

"In order to make out a prima facie case of an equal protection violation in the composition of a jury, a defendant must show that an identifiable, distinct class has been substantially under-represented in the source from which jurors have been drawn over a significant period of time."[5]   <u>United States v. Horne</u>, 4 F.3d 579, 588 (8th Cir.

_____

[5]In the alternative, a defendant may raise an Equal Protection challenge under <u>Batson v. Kentucky</u>, if he alleges that the prosecutor used a peremptory challenge to strike a potential Juror based solely on race, in violation of Equal Protection.  See, <u>Batson v. Kentucky</u>, 476 U.S. 79, 89 (1986); see also, <u>United States v. Thompson</u>, 450 F.3d 840, 844 (8th Cir. 2006); <u>United States v. McKay</u>, 431 F.3d 1085, 1092 (8th Cir. 2005), cert. denied, --- U.S. ---, 126 S.Ct. 2345 (2006).  Here, Fink has asserted

1993), cert. denied, 510 U.S. 1138 (1994), citing Castaneda v. Partida, 430 U.S. 482, 494 (1977).   The burden is on the challenging party "to prove the existence of purposeful discrimination."   United States v. Garcia, 836 F.2d 385, 388 (8th Cir. 1987), quoting Batson v. Kentucky, supra at 93.

A defendant may prove purposeful discrimination by proving disproportionate impact.   See, Batson v. Kentucky, supra at 93; United States v. Garcia, 836 F.2d at 388.   Disproportionate impact may be shown in two ways:

> Disproportionate impact may be demonstrated either by showing that the defendant's cognizable racial group has not been summoned for jury service over an extended period of time; or that his group is substantially underrepresented on his venire and that the venire was chosen under a practice providing the opportunity for discrimination.

United States v. Garcia, 836 F.2d at 388, citing Batson v. Kentucky, supra at 95.

Once the Defendant asserts a prima facie case of purposeful discrimination, the burden shifts to the State to "explain adequately the racial exclusion."   Batson v. Kentucky, supra at 94, citing Alexander v. Louisiana, 405 U.S. 625, 632 (1972).   "[T]he State

---

no claim, under Batson v. Kentucky, relating to peremptory challenges by the prosecution, and no potential claim is apparent to us from the Record submitted. Therefore, we focus our analysis on any potential Equal Protection violation from the general selection of the venire.

must demonstrate that 'permissible racially neutral selection criteria and procedures have produced the monochromatic result.'" <u>Id.</u>, quoting <u>Alexander v. Louisiana</u>, supra at 632.

b.   <u>Legal Analysis</u>.   Initially, we note that, as an African-American, Fink is part of a "identifiable, distinct class." <u>United States v. Horne</u>, supra at 588.  We also note that Fink correctly cites <u>Batson v. Kentucky</u> for the proposition that "a defendant may make a prima facie showing of purposeful racial discrimination in selection of the venire by relying solely on the facts concerning its selection **in his case**." <u>Id.</u> at 95 [emphasis in original]; see also, <u>Petitioner's Memorandum in Response</u>, supra at 5.  In other words, Fink need not prove that minorities were excluded time, and again, from venire panels, in order to assert an Equal Protection claim.   Instead, the fact that "members of [Fink's] race were substantially underrepresented on the venire from which his jury was drawn," <u>Batson v. Kentucky</u>, supra at 95, could support a prima facie claim of an Equal Protection violation, if Fink had offered any evidence that "the venire was selected under a practice providing the opportunity for discrimination." <u>Id.</u> (internal quotation omitted), citing, in part, <u>Whitus v. Georgia</u>, 385 U.S. 545, 552 (1967).

Fink advances no challenge to the use of voter registration lists, or the other sources for drawing a Jury pool, in Hennepin County.   He complains only that somehow the selection of Jurors should be adjusted to ensure a precise representation of each racial group in each weekly venire.   However, such precision is not constitutionally required.   We see nothing in the Record to establish the types of discriminatory practices that have been invalidated by the Supreme Court in other Equal Protection cases that relate to the composition of the venire.   See, e.g., Alexander v. Louisiana, supra at 630 (Indictment by all-white Grand Jury created prima facie case for Equal Protection violation where selection procedures were not racially neutral, and where "racial designation on both the questionnaire and the information card provided a clear and easy opportunity for racial discrimination"); Whitus v. Georgia, supra at 551 (use of taxpayer lists that included racial designation to select venire for Petit Jury created prima facie case of discrimination); Avery v. Georgia, 345 U.S. 559, 562 (1953)(prima facie case of discrimination found where Jury commissioners used colored cards to identify race of potential Petit jurors, and the "practice ma[de] it easier for those to discriminate who are of a mind to discriminate"). As a consequence, even if Fink had squarely raised an Equal Protection claim, based upon the racial composition of his Jury, it would have necessarily failed on this

Record, and accordingly, we recommend a dismissal of his Petition on this ground, as well.

In sum, having found no merit in the Petition for Habeas Corpus, we recommend that the Petition be dismissed with prejudice.

NOW, THEREFORE, It is  –

RECOMMENDED:

That the Petition for a Writ of Habeas Corpus [Docket No. 1] be dismissed with prejudice.


Dated:  October 16, 2007          s/Raymond  L.  Erickson
                                  Raymond L. Erickson
                                  CHIEF U.S. MAGISTRATE JUDGE


NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than November 2, 2007,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to

comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than November 2, 2007,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.